J-S34008-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RICKY CARBONE | |
| Appellant | No. 1170 WDA 2013 |

Appeal from the Judgment of Sentence December 13, 2007
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0000678-2006

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY OTT, J.: **FILED DECEMBER 16, 2014**

Ricky Carbone appeals *nunc pro tunc* from the judgment of sentence entered December 13, 2007, in the Cambria County Court of Common Pleas. After Carbone was convicted by a jury of the sexual assault of his minor daughter, the trial court sentenced him to an aggregate term of two and one-half to seven years' imprisonment, followed by three years' probation. Although his judgment of sentence was affirmed by this Court in February of 2011, he was granted a direct appeal *nunc pro tunc* by stipulation of the parties, following the filing of a petition for collateral relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*. On appeal, Carbone challenges the trial court's determination that its erroneous exclusion of evidence did not prejudice Carbone. For the reasons set forth below, we affirm.

The tortured procedural history of this case is as follows. In February of 2006, Carbone was charged with eight counts each of aggravated indecent assault, indecent assault, and corruption of a minor[1] for the sexual abuse of his five-year-old daughter, F.S., ("the victim") between September 2004 and April 2005. "The essence of the charges was that [he] digitally penetrated and otherwise molested [the victim] at least once monthly during an eight month period of visits."[2] ***Commonwealth v. Carbone*** (***Carbone I***), 981 A.2d 307 (Pa. Super. 2009) (unpublished memorandum at 1). On April 20, 2006, Carbone filed a pre-trial motion alleging the victim had accused him of sexually molesting her on two prior occasions, when she was two and four years old, and the allegations were determined to be unfounded. ***See*** Omnibus Pre-Trial Motion, 4/20/06, at ¶ 3. Moreover, he asserted prior psychological evaluations of Mother and the victim revealed that Mother suffered from "ficititicous (sic) disorder" and that the victim had been coached into making false allegations.[3] ***Id.*** at ¶ 7. Accordingly, he

_____

[1] 18 Pa.C.S. §§ 3125(a)(7), 3126(a)(7), and 6301(a)(1), respectively.

[2] The victim was born in June of 1999. N.T., 9/13/2007, at 77. Her mother, G.S. ("Mother"), and Carbone never married, and ended their relationship about nine months after her birth. ***Id.*** at 78. At the time of the assaults, Mother had primary custody of the victim, and Carbone had bi-monthly visitation rights. ***Id.*** at 80.

[3] As a result of allegations that the victim had been assaulted by both Carbone and an uncle in March of 2003, Mother was referred to psychologist Dennis Kashurba for a psychological evaluation. That evaluation was conducted on May 14, 2003. In Kashurba's report, he referred to a
*(Footnote Continued Next Page)*

requested the trial court order both Mother and the victim to undergo psychological evaluations to determine "whether taint is present to render the alleged victim incompetent to testify at trial." *Id.* at ¶ 8. Carbone also asked the trial court to schedule a taint hearing.[4] *Id.* at 3.

On August 18, 2006, the trial court ordered Carbone, Mother and the victim to submit to psychological evaluations. Thereafter, on October 26, 2006, in response to a request by the Commonwealth, the court entered an order directing (1) the victim first undergo a competency exam with psychologist Carol Hughes, (2) the victim then undergo a taint exam with Dr. Allen Pass, and (3) the results of both exams be provided to all parties by November 29, 2006.[5] *See* Order, 10/20/2006.

_(Footnote Continued)_ _____

psychological evaluation of the victim performed by Dr. Heidi Sedwick sometime after similar sexual abuse allegations were made in May of 2002, but before the allegations in March of 2003. *See* Evaluation of G.S. by Dennis M. Kashurba, 5/14/2003, at 1. Dr. Sedwick's report is not included in the certified record.

[4] The Pennsylvania Supreme Court has defined "taint" as follows:

> Taint is the implantation of false memories or the distortion of real memories caused by interview techniques of law enforcement, social service personnel, and other interested adults, that are so unduly suggestive and coercive as to infect the memory of the child, rendering that child incompetent to testify.

*Commonwealth v. Delbridge*, 855 A.2d 27, 35 (Pa. 2003) ("*Delbridge I*").

[5] Although both examinations were completed, timely reports were not provided to the parties. Accordingly, on February 20, 2007, the
_(Footnote Continued Next Page)_

Ultimately, a competency hearing was conducted on June 13, 2007. At the conclusion of the hearing, the trial court determined that Carbone failed to demonstrate an initial showing of taint. **See Delbridge I**, **supra**, 855 A.2d at 40 (holding that the party alleging taint must present clear and convincing evidence of taint before the competency of a victim may be explored). Specifically, the court found "there has been no showing that in any way there was an implantation of false recollections or a distortion of real recollections or that the process was so suggestive or coercive as to change what this child states as having happened." N.T., 6/13/2007, at 56. Therefore, the trial court declined to hear expert testimony regarding the competency of the victim.

Following the hearing, on August 16, 2007, the Commonwealth filed a motion in *limine* seeking to preclude, *inter alia*, Carbone's use at trial of all psychological evaluations of the victim and Mother.[6] Specifically, it argued the evaluations qualified as privileged communications pursuant to 42 Pa.C.S. § 5944.[7] On August 24, 2007, Carbone filed a motion in *limine*

_(Footnote Continued)_ ―――――――

Commonwealth petitioned the trial court for an order directing the reports be completed by February 27, 2007. The court granted the Commonwealth's petition by order entered that same day.

[6] The Commonwealth also sought to preclude all Children and Youth Services ("CYS") records involving the victim. **See** Motion in Limine to Preclude Use of Psychological Evaluations and CYS Records, 8/6/2007, at ¶ 4.

[7] The statute provides as follows:

_(Footnote Continued Next Page)_

- 4 -

seeking to preclude the use of the victim's medical records at trial.[8]  The trial court conducted a hearing on the motions on August 29, 2007.  Thereafter, on September 6, 2007, the court entered an order granting the Commonwealth's motion in *limine* and denying Carbone's motion in *limine*. Specifically, the trial court precluded Carbone from using either the evaluations of Mother, performed by psychologist Dennis Kashurba, or the evaluation of the victim, performed by psychologist Carol Hughes, absent waiver of the privilege.

The case proceeded to a jury trial on September 13, 2007.  In addition to the victim and Mother, the Commonwealth presented the testimony of Dr. Mary Carrasco, who conducted a physical examination of the victim on July

*(Footnote Continued)* —————————

> No psychiatrist or person who has been licensed … to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S. § 5944.

[8] Specifically, Carbone alleged that although a medical exam of the victim revealed "signs of vaginal penetration," the exam was conducted two months after the alleged abuse ended.  Moreover, CYS records revealed the victim often masturbated by inserting toys or other objects into her vagina. Therefore, Carbone argued "the probative value [of the medical records was] substantially outweighed by the danger of unfair prejudice."  Motion in *Limine*, to Preclude the Use of Medical Records by Prosecution, 8/24/2007, at ¶ 6.

5, 2005, which revealed "physical findings were highly suspicious for vaginal penetration."[9]   N.T., 9/13/2007, at 141.   The defense presented four witnesses, Carbone, himself, Carbone's former girlfriend, Carbone's father, and Hughes, who testified as a lay witness regarding contradictory statements the victim made during her competency evaluation.[10]   On September 14, 2007, the jury returned a verdict of guilty on one count each of aggravated indecent assault, indecent assault, and corruption of minors. For the remaining 21 charges, the jury returned a verdict of not guilty.[11]

---

[9] Dr. Carrasco explained that even if she saw the victim during a routine exam, she would have found the victim's injuries "suspicious enough of sexual abuse" to report to CYS.  N.T., 9/13/2007, at  144.  Moreover, although she acknowledged under cross-examination that she was not aware of the victim's history of self-masturbation, she testified it would not have changed her opinion.  *Id.* at 145.

[10] Thereafter, the Commonwealth presented two rebuttal witnesses – the investigating detective to contradict certain testimony of Carbone's father, and Alan Grimme.  Mr. Grimme, who did not know any of the parties, testified that he received messages on his answering machine in April and May of 2004 from a little girl.  Mother had testified that Mr. Grimme contacted her after receiving "odd" messages from a little girl, and, after recognizing the victim's voice, she immediately contacted the victim's therapist.  The content of the messages was precluded as hearsay.  N.T., 9/13/2007, at 86.

[11] Following the jury's verdict, the trial court directed Carbone to undergo an assessment by the Sexual Offenders Assessment Board ("SOAB") to determine whether he met the criteria classification as sexually violent predator ("SVP") under the former Megan's Law, 42 Pa.C.S. § 9791 *et seq*. The SOAB investigator determined that Carbone did **not** meet the criteria for classification as an SVP.  Effective December 20, 2012, the Sex Offender Registration and Notification Act (SORNA) replaced Megan's Law, and applies to Carbone's conviction in this case.  **See** 42 Pa.C.S. 9799.13(1) (SORNA

*(Footnote Continued Next Page)*

On December 13, 2007, Carbone was sentenced to a term of two and one-half to seven years' imprisonment for aggravated indecent assault, followed by a consecutive three years' probation for corruption of a minor.[12] Carbone filed a timely appeal to this Court, raising the following claims: (1) the trial court erred in determining Carbone presented insufficient evidence of taint; (2) the trial court erred in refusing to permit impeachment of Mother's testimony by use of the psychological evaluations performed by Kashurba and Hughes; and (3) the trial court erred in prohibiting the use of the psychological evaluations and CYS records regarding Mother and the victim. **See Carbone I**, **supra**, unpublished memorandum at 10-11.

In a split decision, a majority of the panel determined the trial court did not abuse its discretion in concluding that Carbone failed to present sufficient evidence of taint, and that the CYS records, including previous "unfounded" claims of sexual abuse, were inadmissible at trial. However, with respect to the psychological evaluations of Mother and the victim, the majority found the evaluations were not "privileged" pursuant to Section

_____
*(Footnote Continued)* ──────────────

applies to "an individual who, on or after the effective date of this section, is convicted of a sexually violent offense[.]"); § 9799.12 (defining "sexually violent offense" as Tier I, II, or III offense listed in § 9799.14); § 9799.14(d)(8) (classifying conviction of 18 Pa.C.S. §§ 3125 and 3126(a)(7) as Tier III sexual offenses). Neither Carbone, nor the Commonwealth, has raised a claim concerning Carbone's registration requirements under SORNA.

[12] Carbone's conviction of indecent assault merged for sentencing purposes. N.T., 12/13/2007, at 23.

5944, because they were "not completed for treatment purposes." *Id.*, unpublished memorandum at 22. Therefore, the majority concluded the trial court erred when it ordered preclusion of the evaluations on that basis. However, because none of the psychological evaluations at issue were part of the certified record, the majority further found it was unable to determine whether the trial court's evidentiary error was prejudicial to Carbone. *See id.* at 23-24. Accordingly, the majority remanded the case for a harmless error evaluation by the trial court. The court explained:

> If the trial court determines that the error was harmless because of lack of prejudicial impact of the erroneous ruling, [Carbone] is not entitled to relief. If the trial court finds that the error was not harmless, judgment of sentence is to be vacated and [Carbone] granted a new trial.

*Id.* at 25.[13]

Upon remand, the trial court conducted a hearing on September 23, 2009. Carbone presented no witnesses at the hearing, but simply

_____

[13] The Honorable Mary Jane Bowes filed a concurring and dissenting memorandum in which she agreed the psychological evaluations at issue were not privileged pursuant to Section 5944, but concluded that Carbone was entitled to "a new competency hearing as well as a new trial[.]" *Carbone I*, *supra*, (concurring and dissenting unpublished memorandum at 1). Specifically, Judge Bowes found the trial court abused its discretion (1) in refusing to permit Carbone to introduce testimony at the competency hearing which was "directly relevant to the issue of taint;" and (2) in refusing to permit Carbone to impeach the victim with "highly material, exculpatory evidence" contained in the CYS records, specifically, that CYS had concluded that two prior allegations of abuse by the victim against Carbone were unfounded. *Id.* at 5-6.

introduced into evidence Kashurba's psychological evaluation of Mother and Hughes's competency evaluation of the victim. Over Carbone's objection, the Commonwealth presented the testimony of Dr. Mary Berge for the limited purpose of explaining the DSM-IV definition of "factitious disorder NOS," a diagnosis given to Mother in Kashurba's report. On November 2, 2009, the court issued an opinion, concluding that Carbone was not prejudiced by its erroneous evidentiary ruling.

Carbone filed a timely appeal. In an unpublished decision, a panel of this Court affirmed the judgment of sentence. Specifically, the panel found Carbone had failed to develop any argument or discussion as to how the trial court erred or abused its discretion in concluding that its evidentiary error was not prejudicial. **Commonwealth v. Carbone** (**Carbone II**), 24 A.3d 467 (unpublished memorandum at 4-5, 6-7) (Pa. Super. 2011).

Thereafter, on November 19, 2012, Carbone filed his first PCRA petition,[14] asserting, *inter alia*, the ineffectiveness of prior appellate counsel for filing a deficient brief before the Superior Court, and for failing to challenge the trial court's exclusion of psychological reports submitted by Drs. Allen Pass and Heidi Sedwick.[15] Upon stipulation of the parties, on May

---

[14] Carbone's petition was filed by privately retained counsel, who continues to represent him in this appeal.

[15] Dr. Pass performed a taint examination of the victim in conjunction with Hughes's competency evaluation. Although Hughes refers to Dr. Pass in her report, the certified record does not include a separate report authored by

*(Footnote Continued Next Page)*

14, 2013, the trial court entered an order reinstating Carbone's direct appeal rights. Specifically, the court found the PCRA petition was "meritorious on its face in its allegations that appellate counsel rendered ineffective assistance by submitting a defective brief to the Superior Court." Order, 5/14/2013. Accordingly, the court directed Carbone to file a notice of appeal within 30 days. This timely *nunc pro tunc* appeal followed.[16]

On appeal, Carbone argues the trial court's harmless error analysis was erroneous, and he was prejudiced by the trial court's preclusion of the reports and testimony of Kashurba (May 2003 evaluation of Mother), Hughes (March 2007 evaluation of the victim), Dr. Pass (March 2007 evaluation of the victim), and Dr. Sedwick (2002 evaluation of the victim). Further, he contends the evidence of his guilt was not overwhelming, since there was no admission of guilt or uncontradicted physical findings. Rather, Carbone

_____
*(Footnote Continued)* ──────────────

Dr. Pass. As explained *supra* in n.3, Dr. Sedwick performed a psychological evaluation of the victim after prior allegations of abuse were made in May of 2002.

[16] On June 11, 2013, the trial court directed Carbone to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Carbone complied with the court's directive, and filed a concise statement on July 10, 2013. Although the concise statement was filed two days late, the trial court addressed the issues raised by Carbone in its opinion. "When counsel has filed an untimely Rule 1925(b) statement and the trial court has addressed those issues we need not remand and may address the merits of the issues presented." **Commonwealth v. Thompson**, 39 A.3d 335, 340 (Pa. Super. 2012), *citing* **Commonwealth v. Burton**, 973 A.2d 428 (Pa. Super. 2009). Therefore, we proceed to a discussion of the issue on review.

claims, there is a "reasonable possibility that [the] error might have contributed to the conviction." Carbone's Brief at 30.

At the outset of our discussion, it is important to set forth the parameters of our review. Carbone was granted a direct appeal *nunc pro tunc*, after a remand by this Court for a harmless error analysis by the trial court. Therefore, our review is limited to the remand directive in this Court's June 2, 2009, memorandum, that is, whether Carbone was prejudiced by "the erroneous ruling concerning the psychological evaluations," and the evidence presented during the remand hearing. **Carbone I**, **supra**, unpublished memorandum at 25.

In the prior memorandum decision, the majority outlined the proper consideration for a harmless error analysis.

> [Carbone] is not entitled to a new trial merely upon showing in the abstract that the trial court made an erroneous evidentiary ruling. Rather, the error must have been prejudicial in the context of [Carbone's] trial. Under the harmless error doctrine, an accused is entitled to a "fair trial"; he is not entitled to a "perfect trial". **Commonwealth v. Watson**, 945 A.2d 174, 177 (Pa. Super. 2008), *quoting* **Commonwealth v. Drummond**, 775 A.2d 849, 853 (Pa. Super. 2001).

> It is well established that an error is harmless only if we are convinced beyond a reasonable doubt that there is no reasonable possibility that the error could have contributed to the verdict. The Commonwealth bears the burden of establishing the harmlessness of the error. This burden is satisfied when the Commonwealth is able to show that: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and

- 11 -

> uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict.
>
> ***Commonwealth v . Passmore***, 857 A.2d 697, 711 (Pa. Super. 2004), *quoting* ***Commonwealth v. Laich***, 777 A.2d 1057, 1062-1063 (Pa. 2001).

***Id.***, unpublished memorandum at 24.

At the remand hearing, Carbone introduced into evidence Kashurba's May 2003 psychological evaluation of Mother, and Hughes's March 2007 competency evaluation of the victim. Neither psychologist testified during the hearing. The Commonwealth, however, called Dr. Mary Berge to testify regarding the definition of "factitious disorder NOS," a disorder Kashurba associated with Mother.[17] The remainder of the hearing consisted of argument presented by the parties. Thereafter, the trial court concluded Carbone was not prejudiced by the exclusion of Kashurba's evaluation of Mother or Hughes's evaluation of the victim.

_____

[17] Dr. Berge explained the diagnostic criteria for "factitious disorder," as defined in the DMS-IV:

> There are several criteria. The first criteria is the intentional production or feigning of physical and psychological signs or symptoms. The second criteria … is the motivation for the behavior is to assume the sick role. And the third criteria … is that external incentives for the behavior are absent.

N.T., 9/23/2009, at 12. Dr. Berge further testified that an example of factitious disorder NOS would be "factitious disorder by proxy." ***Id.*** at 13. In such a case, however, the external incentives would still be absent. ***Id.***

The trial court explained the bases for its ruling in a November 2, 2009, opinion. With respect to Kashurba's report and potential testimony, the trial court found that "Kashurba's testing and diagnoses of [Mother] established her mental health issues but **did not establish that she programmed the child**." Trial Court Opinion, 11/2/2009, at 3 (emphasis supplied). Although Kashurba diagnosed Mother with "factitious disorder," at the remand hearing,[18] the Commonwealth presented testimony from Dr. Berge, who explained that for a diagnosis of factitious disorder the "external incentives for the behavior, like economic gain or custody, … those have to be absent in order to be factitious disorder, even NOS." *Id.* at 4, *citing* N.T., 9/23/2009, at 17.

The trial court also found "troubling" the fact that Kashurba's evaluation was conducted in May of 2003, two years before the victim reported the abuse in the present case and four years before trial. Trial Court Opinion, 11/2/2009, at 3. Moreover, as for Kashurba's statement in the evaluation that "demonstrable evidence of sexual abuse … at this point in time, does not appear to be present[,]" the trial court noted that the statement would likely have been excluded at trial because it was too remote to the proceedings. *Id.* The court opined: "Permitting Mr.

---

[18] Kashurba also diagnosed Mother with "personality disorder NOS." Evaluation of G.S. by Dennis Kashurba, 5/14/2003, at 5.

Kashurba to state his opinion on demonstrable evidence of sexual abuse three years prior to the trial would potentially cause jury confusion." *Id.*

Furthermore, with regard to Kashurba's "potential testimony that the incidents being tried constituted [M]other's fifth allegation of abuse against the child," the court questioned the admissibility of the testimony since it would constitute prior bad acts of both Mother and Carbone pursuant to Pa.R.E. 404(b). *Id.* at 3-4. As the court explained, "[t]he parties were aware of [M]other's multiple allegations of child abuse and the subject was simply not introduced at trial."[19] *Id.* at 4. Therefore, the trial court found that the information contained in Kashurba's evaluation of Mother "would not have been verdict-changing." *Id.*

With respect to Hughes's evaluation of the victim, the trial court found that "[v]irtually every meaningful statement of substance contained in Ms. Hughes'[s] assessment report of March, 2007, was put to the jury, regardless of whether she qualified as an expert." *Id.* at 6. Indeed, when

---

[19] In fact, when Carbone attempted to testify at trial that he sought custody of the victim because of Mother's "problem with her drugs and alcohol," the Commonwealth immediately objected to the testimony as evidence of prior uncharged bad acts. N.T., 9/14/2007, at 36-37. The court explained to Carbone's counsel that if Carbone wanted to testify about Mother's purported addiction issues, Mother would be permitted to testify regarding the reasons why she requested full custody of the victim, which would involve Carbone's prior bad acts. *Id.* at 39. Defense counsel agreed not to present any testimony regarding either party's prior bad acts. *Id.* As the trial court explained, any challenge to defense counsel's trial strategy is not before the court at this time. Trial Court Opinion, 11/3/2009, at 4.

called as a fact witness at trial, Hughes testified that the victim told her "nothing really bad happened at pap-pap's house,"[20] but that "dad keeps fighting to have mom put in jail and dad wants mom put in court." *Id.  See also* N.T., 9/14/2007, at 19, 28.[21]  Further, the court noted that while Hughes was not granted "expert" status, Carbone was "permitted to elicit significant information … about her licensure, her specialty in forensic evaluation of both juvenile and adult sexual offenders and victims, and her hundreds of interviews since beginning practice in 1985."  Trial Court Opinion, 11/2/2009, at 7.  Therefore, the trial court concluded Carbone suffered no prejudice as a result of its erroneous preclusion of the expert psychological evaluations of Mother and the victim.

Carbone argues, however, that he was prejudiced by the omission of the evidence.  First, with regard to Kashurba's evaluation, he contends "[a] review of the omitted evidence shows that the trial court's error may have contributed to the verdict."  Carbone's Brief at 15.  Carbone asserts that Kashurba "concluded that [Mother] suffered from factitious disorder and was

---

[20] The victim testified that Carbone lived with his father, whom she referred to as "Pap-Pap," and the sexual assaults occurred in the basement at "Pap-Pap's" house.  N.T., 9/13/2007, at 42, 49.

[21] Hughes also testified that the victim told her "there was nothing at Pap-Pap's house that caused her to feel uncomfortable."  N.T., 9/14/2007, at 20. However, Hughes also stated that, later in the interview, the victim acknowledged she "does not feel good around her father" because "she is afraid he'll do bad things," but she would not tell Hughes what those bad things were.  *Id.* at 24.

the source of [the victim's] false allegations of abuse." *Id.* at 16. Accordingly, he contends he was prejudiced when he was not permitted to cross-examine Mother with "this evidence of her bias and motive to fabricate[.]" *Id.*

Our review of Kashurba's evaluation, however, reveals *no* opinion that Mother was the "source of [the victim's] false allegation of abuse." *Id.* Rather, Kashurba's only reference to the possible implantation of false memories was his notation that he had reviewed a **prior** evaluation of the victim performed by Dr. Sedwick, in which the doctor determined that the victim had **not been sexually abused in May 2002**, "and that, in all likelihood, the child had been coached to give her description of the alleged incidents." Evaluation of G.S. by Dennis M. Kashurba, 5/14/2003, at 1. Dr. Sedwick was not called to testify at the remand hearing, and her report is not a part of the certified record. Therefore, while her conclusions were relevant for the purposes of Kashurba's evaluation,[22] they were not relevant on the question of whether the victim had been sexually abused from **September 2004 to April 2005**. Accordingly, we agree with the

---

[22] "It is well established law in the Commonwealth that a medical expert is permitted to rely on reports of other persons which do not appear of record in forming his opinion, provided such matters are customarily relied upon in the practice of his profession." *Commonwealth v. duPont*, 730 A.2d 970, 982 (Pa. Super. 1999), *appeal denied*, 749 A.2d 466 (Pa. 2000 ), *cert. denied*, 530 U.S. 1231 (2000).

conclusion of the trial court that Carbone was not prejudiced by the omission of Kashurba's expert evaluation of Mother conducted two years before the present allegations were revealed.

Next, with regard to Hughes's evaluation of the victim, Carbone contends that "[i]n her investigation, … Hughes uncovered proof that led to her professional conclusion that [Mother] implanted the claims of sexual abuse in [the victim's] mind." Carbone's Brief at 16. Moreover, he asserts that, when the report was excluded, he was deprived of the opportunity to demonstrate the victim "suffered from a mental illness that undermine[d] her credibility" based upon the two "convincing" lies the victim told during her evaluation.[23] *Id.* at 17. We disagree.

Carbone's characterization of Hughes's evaluation is not borne out in the record. At the end of her report, Hughes concluded "there [was] insufficient data to support that sexual abuse of [the victim] ha[d] occurred

_____

[23] Hughes reported that during their interview, the victim told her she had "17 dogs at their house." Mental Health Competency Assessment of F.L., 3/6/2007 and 3/9/2007, at 4. However, later during the interview, the victim acknowledged that she was "just kidding" about having 17 dogs, and that, in fact she only had three dogs, one at her home and two being cared for by others. *Id.* Hughes learned from Mother that the family had no dogs. *Id.* Hughes found it "noteworthy that [the victim] told a convincing lie during the competency assessment and then on follow-up interview, she modified the response but still provided inaccurate/fabricated information." *Id.* The fact that the victim told two "convincing" lies during the evaluation could have been addressed during Hughes's trial testimony. However, counsel for Carbone did not question Hughes about these lies, and accordingly, this issue is waived.

with … Carbone as the alleged perpetrator." Mental Health Competency Assessment of F.L., 3/6/2007 and 3/9/2007, at 10. Nowhere in her report, however, is the opinion that Mother implanted claims of sexual abuse in the victim. In any event, Hughes would not have been permitted to testify as an expert regarding the victim's credibility. *See Commonwealth v. Seese*, 517 A.2d 920, 922 (Pa. 1986) ("It is an encroachment upon the province of the jury to permit admission of expert testimony on the issue of a witness' credibility.") (citation omitted). Therefore, we agree with the assessment of the trial court that Carbone was also not prejudiced by the trial court's preclusion of Hughes's written report.

Lastly, Carbone argues he was prejudiced by the omission of psychological reports prepared by Drs. Pass and Sedwick. Neither of these reports, however, was admitted during the remand hearing. In fact, as noted above, the hearing focused solely on the evaluations performed by Kashurba and Hughes. *See generally*, N.T., 9/23/2009. Moreover, neither the Pass report nor the Sedwick report is included in the certified record. Accordingly, we cannot consider their potential impact on Carbone's trial.[24]

_____

[24] It must be emphasized that this matter is before us on direct appeal *nunc pro tunc*. The only issue upon which the PCRA court granted relief was prior appellate counsel's ineffectiveness for failing to file a competent brief in the appeal after remand. Therefore, to the extent Carbone contends appellate counsel was ineffective for failing to admit copies of the Pass and Sedwick evaluations during the remand hearing, and/or for failing to argue he was prejudiced by the omission of those reports, we note that his only avenue for relief is *via* the PCRA. *See Commonwealth v. Holmes*, 79 A.3d 562, 576 *(Footnote Continued Next Page)*

*See Commonwealth v. Preston*, 904 A.2d 1, 6 (2006) ("The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal.").

Therefore, because we find no abuse of discretion in the trial court's determination that Carbone was not prejudiced as a result of the court's erroneous preclusion of the Kashurba and Hughes evaluations as privileged, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2014

*(Footnote Continued)* ————————

(Pa. 2013) (reaffirming the general rule that "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal.").